IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

  Plaintiff,

    vs.        Case No. 13-10106-JTM

Lester Ray Nichols,

  Defendant.

MEMORANDUM AND ORDER

  The defendant, Lester Ray Nichols, is charged with knowingly failing to register and update his registration as required by the Sex Offender Registration and Notification Act (SORNA) in violation of 18 U.S.C. § 2250(a). The matter is before the court on Nichols's motion to dismiss the charge, arguing that SORNA does not apply to him under the circumstances of his case.

  In 2003, Nichols was convicted of interstate travel to engage in sex with a minor, in violation of 18 U.S.C. § 2423(b). *United States v. Nichols*, No. 03-10127-MLB (D. Kan. Dec. 17, 2003). He was sentenced to 120 months imprisonment.

  Nichols was released from prison and under federal supervision in the District of Kansas in 2012. Up until that time, he had complied with both Kansas and federal authorities in keeping his sex offender registry up to date every three months. He last

registered in early October, 2012, and he was to renew his registration in early January, 2013.

However, in early November, 2012, Nichols boarded a plane from Kansas City International Airport to Manila, Philippines. On November 16, a warrant was issued to arrest Nichols for violation of his supervised release.

On December 26, 2012, law enforcement officers of the Manila Police and Philippine Bureau of Immigration arrested Nichols at a Manila hotel. After he was identified, Nichols met with an agent of the United States Department of State, Diplomatic Security Service (DSS). Nichols was held in custody and deported by plane to Los Angeles, California, where he was taken into custody by the United States Marshal Service and transported to Kansas to face the present charge.

Nichols contends that SORNA did not require him to register as a sex offender while he was in the Philippines. 42 U.S.C. § 16913(a) requires:

> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

SORNA explicitly defines "jurisdiction" as:

(A) A State.
(B) The District of Columbia.
(C) The Commonwealth of Puerto Rico.
(D) Guam.
(E) American Samoa.
(F) The Northern Mariana Islands.
(G) The United States Virgin Islands.
(H) To the extent provided and subject to the requirements of section 16927

of this title, a federally recognized Indian tribe.

42 U.S.C. § 16911(10). Further, SORNA provides that "[t]he term 'resides' means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives." 42 U.S.C. § 16911(13).

Finally, 42 U.S.C. § 16928 provides:

> The Attorney General, in consultation with the Secretary of State and the Secretary of Homeland Security, shall establish and maintain a system for informing the relevant jurisdictions about persons entering the United States who are required to register under this subchapter. The Secretary of State and the Secretary of Homeland Security shall provide such information and carry out such functions as the Attorney General may direct in the operation of the system.

The defendant agues that he does not fall under SORNA because he resided in the Philippines, a foreign country. In advancing this argument, the defendant acknowledges *United States v. Murphy*, 664 F.3d 798 (10th Cir. 2011). In *Murphy*, the court held the defendant violated SORNA when he moved form his residence in Utah to Belize. It observed that

> although SORNA gives a sex offender the ability to satisfy his registration requirement in one state by updating his registration in another state, he cannot do so by registering in a foreign country, because it is not a SORNA jurisdiction. Thus, a sex offender relocating abroad must satisfy his reporting obligations in a jurisdiction involved.
>
> In sum, it is plain that the definitions in § 16911 and the registration obligation in § 16913 require a sex offender, upon changing his residence, to update his registration in a jurisdiction involved—in this case, where the offender has a home or habitually lives or works—even if he did not establish a new residence in a SORNA jurisdiction. To put it more directly, when a sex offender changes residences, jobs, or student status, a reporting obligation arises in a state where he lives, works, or is in school.

664 F.3d at 803. According to the court, the SORNA requirement that the defendant update his registration "attached when he left Bonneville, while he was still in Utah, and not when he arrived in Belize." *Id.* at 804.

Here, Nichols advances several rationales as to why *Murphy* was mistaken, including the verb tense used for "resides" under 42 U.S.C. § 16911(13), and that the intent of Congress to limit the extraterritorial effect of SORNA is reflected in 42 U.S.C. § 16928. He also notes that similar arguments have succeeded in persuading the Eighth Circuit to reach a conclusion contrary to *Murphy* in *United States v. Lunsford*, 725 F.3d 859 (8th Cir. 2013).

*Murphy*, however, remains controlling authority, and establishes that Nichols violated SORNA when he did not update his registration in Kansas prior to departing for Manila. Under SORNA, "[t]he permanent abandonment of an abode constitutes a change of residence, regardless of whether a new residence has been formally adopted." *Murphy*, 664 F.3d at 802-03. While Nichols could not make a new registration in the Philippines, SORNA permitted and required notice of the change in State of Kansas. "[T]his statutory construction aligns with legislative intent, because Congress's goal in enacting SORNA was to ensure that sex offenders could not avoid registration requirements by moving out of state." *Id.*

Alternatively, Nichols argues that 42 U.S.C. § 16913(d) is unconstitutional, as the statute improperly delegates legislative power to the Attorney General to determine whether SORNA should be applied retroactively to pre-Act offenders. Again, Nichols

4

acknowledges that there is a recent Tenth Circuit case reaching a contrary conclusion, *United States v. Rickett*, ___ Fed. Appx. ___, 2013 WL 4750781 (10th Cir. 2013). He correctly notes that in *Rickett*, the court did not directly address the issue of whether application of SORNA to pre-Act offenders violates the non-delegation principle. In *Rickett*, the defendant had pled guilty to the offense, so the Tenth Circuit only decided that the application of SORNA was not plain error.

Plain error is "(1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir.2012). In *Rickett*, the court held that the defendant's SORNA challenge failed at the second stage; since the "purported constitutional infirmity under the nondelegation doctrine is anything but plain (i.e., clear or obvious), we ... need not reach prongs one, three, or four." 2013 WL 4750781, at *5. The court held that the defendant could not establish plain error, because under this standard "to render an alleged error 'clear' or 'obvious,' Mr. Rickett needs *controlling* Supreme Court or Tenth Circuit precedent, or a hefty weight of *controlling* authority from other circuits. *Id.* at *7 (emphasis in *Rickett*). Since the defendant could cite to only a few "concurring and dissenting opinions of several jurists who have noted a potential delegation problem with § 16913(d)'s grant of authority to the Attorney General," he did not meet this standard. *Id.*

However, while *Rickett* is not controlling here given its plain error analysis, the rest of the opinion places his argument strongly in doubt. First, the Tenth Circuit reviewed the history of the nondelegation doctrine, ultimately concluding that the doctrine was virtually

5

dead:

> To facilitate our analysis of whether any error here is "clear" or "obvious" we begin with a brief discussion of the origin and evolution of the nondelegation doctrine. "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The doctrine derives from the Constitution's opening declaration that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. Fidelity to the constitutional text and to the structure of government that the Constitution sets up "mandate[s] that Congress generally cannot delegate its legislative power to another Branch." *Mistretta*, 488 U.S. at 372. Congress may, however, vest "decisionmaking authority" in a coordinate branch so long as it provides "an intelligible principle to which the person or body authorized to [act] is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (alteration in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928)) (internal quotation marks omitted).
>
> Between 1789 and 1935—a period spanning 146 years of constitutional history—the Supreme Court "never struck down a challenged statute on delegation grounds." *Mistretta*, 488 U.S. at 373. Then, in 1935, the Court invalidated two statutes as unconstitutional delegations of legislative power. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 542, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 430, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *see also* 1 Ronald D. Rotunda & John E. Nowak, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 4.8(b), at 649 n. 17 (5th ed. 2012) ("The only time the Court clearly invalidated a statute for being an excessive delegation of legislative authority was 1935.").
>
> The doctrine went dormant thereafter, and the Supreme Court has since upheld, "without deviation, Congress' ability to delegate power under broad standards." *Mistretta*, 488 U.S. at 373; *see Whitman*, 531 U.S. at 474. Indeed, so dormant is the nondelegation doctrine that some have deemed it a "dead letter." *See* Gary Lawson, Delegation and Original Meaning, 88 VA. L.REV. 327, 329 (2002). Still, the Supreme Court has never expressly overruled *Schechter Poultry* or *Panama Refining*; so the doctrine, even if dead, has never received a proper burial.

2013 WL 4750781, at *5-6.

Second, while some dissenting and concurring opinions have suggested a nondelegation doctrine challenge to the application of SORNA to pre-Act offenders, the court stressed that the decisions squarely considering the issue are "abundant," and that the "clear weight of appellate authority" rejects the argument. *Id.* at *7.

> [W]e note that neither the Supreme Court nor our court has ever addressed whether § 16913(d) is an unconstitutional delegation to the Attorney General.... Moreover, those circuits that have considered similar nondelegation challenges to SORNA have uniformly rejected them. *See, e.g., United States v. Kuehl*, 706 F.3d 917, 920 (8th Cir.2013); *United States v. Parks*, 698 F.3d 1, 7–8 (1st Cir.2012), cert. denied, --- U.S. ----, 133 S.Ct. 2021, 185 L.Ed.2d 889 (2013); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir.2012); *United States v. Guzman*, 591 F.3d 83, 91–93 (2d Cir.2010); *United States v. Whaley*, 577 F.3d 254, 263–64 (5th Cir.2009); *United States v. Ambert*, 561 F.3d 1202, 1212–15 (11th Cir.2009); *see also Kuehl*, 706 F.3d at 920 ("We agree with our sister Circuits that section 16913(d) of SORNA is a valid delegation of authority because Congress provided the Attorney General with an intelligible principle to follow." (footnote omitted) (collecting cases)); *Parks*, 698 F.3d at 8 ("All other circuits that have addressed the issue [as to SORNA] have rejected the delegation objection, which modern case law tends regularly to disfavor."); *cf. United States v. Dixon*, 551 F.3d 578, 583–84 (7th Cir.2008) ("Likewise without merit is his argument that for Congress to delegate to an official of the executive branch the authority to fill out the contours of a statute violates the separation of powers. It is commonplace and constitutional for Congress to delegate to executive agencies the fleshing out of criminal statutes by means of regulations."), *rev'd on other grounds sub nom.*, *Carr v. United States*, 560 U.S. 438, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010).

*Id.* (footnotes omitted).

Third, the Tenth Circuit in a separate case has observed that "§ 16913—SORNA's registration provision—does not violate the ... nondelegation doctrine...." *United States v. Carel*, 668 F.3d 1211, 1214 (10th Cir. 2011).

As the court expressly noted in *Rickett*, this language in *Carel* was dicta and thus not

7

controlling. But while *Rickett* may not be as *automatically* fatal to the defendant's second argument as *Murphy* was to his first, it points to the same result. That is, *Rickett* recognized that (1) the nondelegation doctrine is dead if not buried, (2) that "abundant authority" from other circuits "upholds SORNA in the face of nondelegation challenges," and (3) a prior panel of the Tenth Circuit rejected the argument, albeit in dicta.

Finally, it must be noted that the defendant provides small grounds for supporting his request that the court depart from the "abundant authority" and strike down the application of SORNA based upon a "dead letter" doctrine. Rather, the most the defendant does is to stress that *Rickett* is not technically controlling (Dkt. at 6-7), along with a citation to Justice Scalia's observation in dissent in *Reynolds v. United States*, 132 S.Ct. 975, 986 (2012) (Scalia, J.) (dissenting) that a construction of SORNA which would grant the Attorney General discretion to apply the statute to pre-Act offenders "seems to me sailing close to the wind with regard to the principle that legislative powers are nondelegable."[1] Other than this single statement made in dissent, the defendant offers no authority for his second argument, and the court finds SORNA is constitutional.

---

[1] In *Reynolds*, the defendant was a pre-Act offender who challenged the application of SORNA before the Attorney General had effectively implemented any regulations pursuant to 42 U.S.C. § 16928. The Court held that "the Act's registration requirements do not apply to pre-Act offenders *until the Attorney General so specifies*." 132 S.Ct. at 984 (emphasis added). This would be yet another indication that application of SORNA to pre-Act offenders, based on the broad grant of authority under § 16928, is lawful.

IT IS ACCORDINGLY ORDERED this 10th day of November, 2013, that the defendant's Motion to Dismiss (Dkt. 13) is hereby denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE